Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

EASTERN District of Worcester

Massachusetts Division

| | |
|---|---|
| MATTHEW P. Tottenham (Pro-sé) | Case No. _____ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |
| -v- | |
| See Attached. | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

)
)
)
)
)
)
)
)
)
)
)
)
)
)

U.S. DISTRICT COURT
DISTRICT OF MASS.
2021 SEP 17 PM 12: 39
FILED
IN CLERKS OFFICE

VERIFIED COMPLAINT WITH JURY DEMAND

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: MATTHEW PAUL TOTTENHAM
All other names by which you have been known: Matty; MATT.
ID Number: #W102714
Current Institution: Souza-Baranowski Corr. Ctr.
Address: P.O. Box 8000
Shirley   MA.   01464
City   State   Zip Code

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1
Name: Douglas A. DeMoura
Job or Title (if known): Superintendant
Shield Number: Unknown
Employer: Dep't of Correction
Address: P.O. Box 100 Cedar Junction, D.D.U.
Walpole   MA   
City   State   Zip Code
[✓] Individual capacity   [ ] Official capacity

Defendant No. 2
Name: SGT. Lodico
Job or Title (if known): Seargent on the DDU Tiers of B-wing
Shield Number: Unknown
Employer: Dep't of Correction
Address: P.o. Box 100 Cedar Junction, DDU
Walpole   MA.   
City   State   Zip Code
[✓] Individual capacity   [ ] Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3
    Name                              John Doe # 1
    Job or Title *(if known)*          Leutenant (possibly Searagent)
    Shield Number                     unKnown
    Employer                          Dep't of Corrections
    Address                           P.o. Box 100 Ceder Junction, DDU,
                                      Walpole                    MA.
                                      _____City_____    __State__    __Zip Code__
    ☑ Individual capacity    ☐ Official capacity

Defendant No. 4
    Name                              John Doe #2
    Job or Title *(if known)*          Correctional officer
    Shield Number                     unKnown
    Employer                          Dep't of Corrections
    Address                           P.o. Box 100 Ceder Junction , D.D.U.
                                      Walpole                    MA
                                      _____City_____    __State__    __Zip Code__
    ☑ Individual capacity    ☐ Official capacity

☑ See Attached: "Attachment to — page one As follows Defendants;" Defendants #5-8

LAbel:" Attachment to Page one as follows Attached: defendants #5 - 8

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),* you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply):*

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

8th Amendment and 14th Amendment/retaliation aswell.

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

*Please See Attached: under "facts" Paragraphs 1-17*

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐    Pretrial detainee

☐    Civilly committed detainee

☐    Immigration detainee

☒    Convicted and sentenced state prisoner

☐    Convicted and sentenced federal prisoner

☐    Other *(explain)*

## IV.    Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

*See Attached Paragraphs; 18-26*

C.  What date and approximate time did the events giving rise to your claim(s) occur?

February Second 2021

D.  What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Please See: "facts"; Attached paragraphs - 1-17

V.  **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

I was/am left with permanent scars on my face above my left eye, my right shoulder clicks and hurts when used to exorcise. After incident, I had cuts self inflicted with the razor given to me by Sgt. Lodico on both arms- extremely deep; also, both eyes swollen shut, and serious pain /bruises, on my kidneys and midsection, as well as scars (permanent) down my left leg. from assault & swelling

VI.  **Relief**   Also seriouse mental trauma, anxiety and PTSD, exacerbated by this assault.

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

The plaintiff wish the court declare each defendant violated the plaintiff's eighth Amendment rights to be free from cruel and unusual punishment; and endorse these defendants in some cases ic. Lodico's retirement/resignation. Also, grant punitive damages as the court deems just; and injunction against ever going to D.D.U. again, And Any/All litigation costs, including filing fee's and Attorney's fee's if any.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Walpole Ceder Junction's Department Disciplinary Unit.

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☐ No

☑ Do not know

If yes, which claim(s)?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.  Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☒ Yes  I was sent to Mental Stabalization/observation Unit in OCCC
☐ No   where I then filed the correct forms. See below. E(1)

E.  If you did file a grievance:

1.  Where did you file the grievance?

While hospitalized in old Colony Correctional facility. I sent each, the formal grievance, and then the Appeal through OCCC Superintendant, to CJDOU superintendant.

2.  What did you claim in your grievance?

The officer Sgt. Lodico retaliated against me after I filed a grievance on him, resulting in a serious assault, where one of the defendants, left plaintiff a razor, Blade; Sgt. Lodico encouraging plaintiff to kill himself, with this Razorblade inference that he gave/left this razor in plaintiffs cell in plain sight, on screen of tablet.

3.  What was the result, if any?

None. The grievance was denied

4.  What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

I put in a formal Appeal to the superintendant. yes the Grievance process is completed. There is two levels of the grievance process in Massachusetts State prison. Beyond this only the Court is available. [See Attached: Exhibit A]

F.     If you did not file a grievance:

1.   If there are any reasons why you did not file a grievance, state them here:

2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.     Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

The Superintendant of CJ Douglas w. DeMarra rutinely denies inmate grievances in similar fasion. The Superintendant I heard tell one of the defendants that he "would think that we'd cover our mistakes before they leave" emphasis on Before.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*   ✷ See Grievances attached.

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s) _____

Defendant(s) _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition. _____

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☒ Yes

☒ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit    MATTHEW P. TOTTENHAM (Plaintiff.)
      Plaintiff(s)    Thomas Turco Commissioner of Dep't of Corrections
      Defendant(s)    (Defendant) et. el

2.    Court *(if federal court, name the district; if state court, name the county and State)*

      Suffolk, Sp. ct. Mass.

3.    Docket or index number
      1884CV01132-C

4.    Name of Judge assigned to your case
      N/A.

5.    Approximate date of filing lawsuit
      2018

6.    Is the case still pending?

      ☒ Yes

      ☐ No

      If no, give the approximate date of disposition _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

      Some of the Constitutional Claims were dismissed but Not as a Strike to the PLRA. The Medical Malpractice against a doctor not directly employed by the D.O.C., but is a Contractee of the State of MA. and works at Lemeul Shattuck Hospital. She's an orthopedic Surgeon.

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   9/9/21

Signature of Plaintiff   _Matthew P. Tottenham_

Printed Name of Plaintiff   MATTHEW P. TOTTENHAM

Prison Identification #   WI02714

Prison Address   P.O. Box 8000

Shirley    MA.    01464
City       State    Zip Code

### B.   For Attorneys

Date of signing:   N/A

Signature of Attorney   N/A

Printed Name of Attorney   _____

Bar Number   _____

Name of Law Firm   _____

Address   _____

_____
City       State    Zip Code

Telephone Number   _____

E-mail Address   _____

ATTACHMENT TO PAGE ONE AS FOLLOWS

DEFENDANTS;

Douglas A. DeMoura
"SGT. LODICO" (First Name unknown)
John Doe's #One-#Four
John Doe #2
John Doe #3
John Doe #4
"LT. Dankevitch" (First name unknown)
Department of Corrections; and;
Commisioner Carol Micci and;
Wellpath Medical / Mental health providers.
~~Mitzi Peterson~~

ATTACHMENT TO, PAGE Three AS Follows:

Defendants;

Defendant No. 5
NAME          John Doe # 3
Job/TITLE     Correctional officer
Shield No.    Unknown
Employer      Dep't of Correction
Address       P.O. Box 100 Ceder Junction, D.D.U.
              Walpole   MA.
              City      State    Zip code


Defendant No. 6   Jo
NAME          John Doe #4
Job / TITLE   Correctional officer
Shield Number Unknown
Address       Ceder Junction P.O. Box 100 D.D.U
              WALPOLE   MA.
              City      State    Zip Code

(1)

✗ ATTACHMENT TO PAGE THREE AS FOLLOWS ; DEFENDANTS ✗

DEFENDANT No. 7
NAME        Department of Corrections` (Herein Forth "D.O.C.")
TITLE/JOB   To govern the prisoners of MA. Constitutionally & D.O.C. Regulations aka. CMR.'s
Shield NO.  N/A .
Address     50 MAPLE ST.
            MilFORD        MA.        01757
            City           State      ZipCode
            ☑ Individual Capacity   ☑ Official Capacity

DEFENDANT No 8.
NAME        Wellpath Medical / Mental health Providers
Title/Job   To provide Medical/Mental health Care Constitutionally and per 103 Doc 630
Shield No   N/A
Address     16 Chesnut Street, Suite 250
            Foxborough     MA.        02035
            City           State      Zip Code:
            ☑ Individual capicity   ☑ Official Capacity

## VERIFIED CONPLAINT

# facts   With Jury Demand

1.) The Plaintiff witnessed two inmates who had been seriously assaulted by an officer Sgt. Sameuls. He attacked "Joey Sylvester" on his way to Mental health group while his hands were cuffed behind him. Joey ended up with several stitches over his right eye with seriouse swelling as well, he was sticking up for an inmate plaintiff knows as "Blackhand", who's hand was repeatedly smashed in the Food slot or "trap", in front of Joey (and the plaintiff. Sgt. Sameuls then threatened Joey for saying he "saw that I got your back", then was alleged to have been thrown to the ground and punched and his head smashed into the ground several times in front of Mental health Clinician "Courtney", and other officers including Sgt. Lodico (Defendant).

2. The defendant, Sgt. Lodico started targeting inmates on B-1 where the plaintiff was housed. The defendant Lodico entered plaintiffs' cell on three occasions to rip open his Mattress and tip over items on plaintiffs Desk then left quickly, the

(2)

- Defendant was by order of the CDC and the Commissioner to use P.P.E. gear anytime an officer entered a plaintiffs cell or inmates cells in general, He did not follow this mandate and the plaintiff filed an informal Complaint on this disregard for inmates health and life and mandates of Commissioner and CDC during a massive outbreak of Covid in that facility at that time, and my Complaint was denied so the plaintiff filed a formal complaint on this.

3. Within the days following the plaintiff's filing of the formal grievance on Sgt. Lodico the plaintiff was called for a meeting with his paralegal Kate Piper from the Prisoners Legal Services, the plaintiff was repating the incidents which were happening and which has happened on his tier, such as the Sgt. Lodico whenever he worked he would wake the inmates on B-1 up early in the morning for showers which was very unusual, and if you went he would go into your cell with other officers and take all the inmates property, toss it into a bin haphazardly and give the inmate a false or frivolous disciplinary infraction, destroy the property of anyone seen/heard helping the two victims of the assaults mentioned and dump it back into the inmates cell (24) twenty four hours later. The plaintiff avoided ever coming out for Rec or group once a week for Mental health the one group B. wing inmates were offered, after plaintiff witnessed two officers entering Joey Sylvesters cell, loudly hawking a "Loogie" and when the tier was tested as mandated per CDC and Commissioner Micci for Covid, only this inmate tested positive and the officers who went into his cell were diagnosed positive as well and were NOT wearing ppe either during that incident.

4. On February Second during the above mentioned visit with paralegal Kate Piper, an officer who was sitting listening and watching plaintiff's meeting (via Zoom) was approached by another officer one of the John Doe defendants, and whispered in his ear, looked in on my then left.

5. When plaintiff returned, his cell was empty. He had been left his tablet which was totally dead battery, a bare mattress and one blanket, but on the screen of his tablet was a Razor blade, brand new. The defendant came to bring the inmate "blackhand" back to his cell from rec, and when he did, the plaintiff asked why the defendant did this. The defendant smirked and said "I'll be waiting" and nodded towards plaintiffs desk where the tablet and razor were. The plaintiff then told the defendant Lodico he needed to speak to Mental health "crisis" team called "Medic 5". Plaintiff said "I need Medic 5 now".

(3)

the defendant did not respond he left with the other defendants John Doe's (1-3) one through three.

6. The plaintiff then requested to speak to the lvetenant and reqvested medic five from the round officer on every single round from 10:30am respectively until 2:30pm. Also, when the "Lt. Dankevitch" (defendant) the plaintiff requested a reason for the actions of "Sgt. Lodico" and he covld not give me any reason saying he "was not at liberty to discuss this at this point he did not know", and the plaintiff then told the levtenant that he wanted to "speak to medic (5)-five", the "Lt. Dankevitch" then said "Losing your property is not a - crisis", the plaintiff then stated that "he "was feeling Suicidal and that is a crisis", the defendant Dankevitch then began to walk away, while the plaintiff yelled (just so he could hear him not aggressively) "so are you getting crisis for me", and the defendant Dankevitch stated "you want to see them about your property that's not a crisis" and left the tier.

7. The plaintiff requested to speak to Medic five from Sgt.- Lodico again when Lodico (defendant) came to plaintiff's cell to ask him if he "wanted to go speak to the Captain", plaintiff said "for what"? and Sgt. Lodico said "do you want to speak to him or not", and plaintiff said "no I want to speak to Mental health because I'm in a crisis". Sgt. Lodico said "I'll be waiting" and nodded at the desk again, and then said it again that he'd be waiting. Sgt. Lodico left.

8. At 2:30 on february second the plaintiff had already asked the C.o. during his last round at about 2:20 if he could call crisis as he felt Suicidal. The C.o. ignored the plaintiff and left.

9. the plaintiff then took the Razor and began trying to cut his Arteries knowing he would die then. Plaintiff cut his arms extensively but befor he could find the Arterie the book cart pushed around by a recreation officer who ran and called for help.

10. The first shift was still there unfortunately. when plaintiff attempted to give the officer at the door the razor the defendant John Doe #(1) one sprayed plaintiff with mace so it caused plaintiff to drop the —

11. The inmate victim "blackhand" who was my neighbor was asked the same thing. when Sgt. Samevls and Sgt. Lodico brought him up to a "multipurpose room", and then took his cuffs off and beat the inmate jumping him stomping on his midsection and kidneys never hitting the front of his face only the back of his head and pulling his dreads.

(4)

razor near the door and turn away from the Mace where the officer believed to be a Lieutenant (Not Dankevitch) defendant doe no. one kept spraying plaintiff's back yelling "get the vapor." The plaintiff then tried to cover his face with a blanket, he put water on part of it and breathed through that. "Vapor" AKA "MK-IX" is ten times stronger than bear Mace, and becomes stronger the longer an inmate is exposed to it.

12. What followed was, the door opened and these defendants entered. The plaintiff made a desperate attempt at getting out of the cell to remain on camera so he could not be beaten.

13. Ultimately, the plaintiff was dragged by his feet, which were held at first up in the air, then Sgt. Lodico used his helmet and hit the plaintiff in the left side of his face injuring him badly.

14. Then the other defendants and Sgt. Lodico finished their plan, Sgt. Lodico smashed the plaintiff's face into the ground hard many times while another defendant chicken winged the plaintiff's right arm pushing it across his entire body so his right elbow felt like it was touching his left ear, another defendant stomped plaintiffs kidney's on his right side hard, also alternating from stomping to kicking the plaintiff right midsection, the plaintiffs legs were shackled and crossed and pushed up into plaintiffs butt, and something possibly a shield was used to scrape down the plaintiff's left leg, the entire time plaintiff was on his belly on the ground Sgt. Lodico had his knee on the back of my neck exactly like George Floyd's case, I told him "if you stay like this you're going to kill me," he slammed his other knee into the back of my head in response, then a few seconds later I said it again with more urgency & he smashed his knee into my head several times then said "get him up."

15. On the way to the medical room the guy on my right was sticking his gloved fingers into my arm wound deeply, and Sgt. Lodico slammed me into the door frames of every doorway on the way up.

16. I was then sent to the hospital were a plastic surgeon worked on my face were the helmet punches knees and kicks hit me, and then Diagnosed with a concussion. My body had bruising all on my right midsection front and back, my shoulders had bruises, my eyes were swelling shut, and my left leg had serious abrasions, scraped all the way from my knee to my foot. I also had serious self inflicted wounds with the razor left in my cell.

(5)

16. On my way back in early the next morning I came through the front door of the building, I saw Douglas W. DeMoura, Lt. Dankevitch, Defendant John Doe #1, and some one I did not reckognize, I believe it was the captain of B-wing I saw him before but never spoke to him. I walked around the corner of the bubble, and because the door open and shut to quick me and the two officers with me were left standing there, I heard Douglas W. DeMoura's voice ask "did we do the eye here?" and Lt. Dankevitch say "No we couldn't get her up there in time we had to send him out", Douglas W. DeMoura said "you'd think we'd take care of those mistakes here before we send em out!" in admonishment to John Doe #1 as I heard him (John Doe #1) Say "No, we tried she wasn't answering her phone and the ambulance got called".

17. Now, I have permanent scars on my left forehead, and eye, as well as down my knee to my shin on my left leg, and pain in my right shoulder and migrains starting in or around the wound above my left eye like a nerve pain that shoots back over my head. I also suffer seriouse pannick attacks, and anxiety as well as depression, having hung my-self four times following this incident, I never hung my self before this in my life. I spent three months in a mental stabbalization and observation unit at the Bridgewater Complex.

## Statement of Claim
### Attachment from IV. 8.B event arising from prison.

18. Douglas W. DeMoura, he is personally liable for damages for refusing to investigate my claims stating no further investigation need take place after my grievance was denied, I sent my appeal to his office for him which he personally had full knowledge of all events, also knowledge of other assaults coming out of these units which he knowingly turned a blind eye to resulting in further attacks on inmates including me. He also, with his words when I came back to the building proved he wishes for these types of things to be covered up prior to sending inmates out for outsiders to see.

19. Sgt. Lodico, retaliated on me for filing a grievance on him for justified reasons, openly retaliated on other inmates on my tier if seen helping the other assault victims and instituted cruel and unusual punishments by falsifying disciplinary infractions in order to take plaintiffs property and then left him in there with a razor blade which presumably he gave to the plaintiff and encouraged him to cause harm to himself. Then visciously assaulted plaintiff, using

'(6)

his protective Gear (helmet) as a weapon, and using his knees, fists, and punches to cause seriouse harm to the plaintiff for the perpouses of intimidating him into not filing grievances and refusing to get Medic five crisis suicide prevention resulting in plaintiffs attempt at suicide, resulting in seriouse damage to plaintiffs arms and mental trauma, leaving plaintiff with disfigurement, (facial), and mental trauma, and encouraging his officers to join in on this attack. Then falsifying documents saying the plaintiff cut his own face in attempt at covering up his assult.

20. John Doe #1 used chemical weapons against the plaintiff during a mental health crisis, spraying the plaintiff with several types of chemicals including "MK IX" which is 10x stronger then Bear Mace, in order to hurt the plaintiff and to keep plaintiff from coming to the door to cuff up and turn in the razor, this is usual policey and in deposition will show it is the policey which is used in D.D.U. as well, which shows that by spraying me twice with two different chemicals ONLY when I approached the door to cuff up when asked if I wasn't then I knew it was a planned assault by all defendants who responded for the "emergeney extraction team" which must've been either assigned on shif commanders orders.

21. John Doe #2 held the shield and entered my cell first, the plaintiffs' first physical encounter was with him, as plaintiff tried to get the upper hand to get out of the cell or to stay close so no officers could block the camera which the IPS used to video each such extraction, and the officers will try to block the camera with bodies so that the camera man can't see exactly what's going on on the floor once an inmate is over powered and incapacitated. The plaintiff here eventually failed and something was used to scrap deeply into the plaintiffs left knee down his left shin. He participated in the assault as the officer assigned to either the left leg or right depending on his pre-entry asignment. Sgt. Lodico would have assigned a "team member" to a limb or reorraits. Discovery will show which this defendant was assigned to. He did not stop, report, or make a complaint of brutality, and as such, was either part of the kicks, scraps, punches, chicken wing etc...

22. John Doe #3 in quote, he was the second man after Sgt. Lodico so there was the shield, sgt. Lodico then John doe #3. He did not report, try to stop, or make a complaint of brutality, and as such was a willing participent of this brutality once the plaintiff was incapacitated.

(7)

23. John Doe # 4 was behind John doe # 3 and entered plaintiff's cell without stopping, reporting, or making a complaint of Brutality, and as Such was/is guilty of brutality with Malicious intent once the Plaintiff was incapacitated leaving plaintiff with seriouse facial scars, leg scars, and trauma to his body and mind.

24. Lt. Dankevitch spoke to the plaintiff at which time plaintiff reported his concerns about retaliation by Sgt. Lodico for filing a grievance on Sgt. Lodico, the plaintiff told Lt. Dankevitch he required crisis intervention for Suicidal thoughts, he requested crisis several times, Lt. Dankevitch told plaintiff he would not be getting "Medic 5" because "Losing your property isn't a crisis", the plaintiff then said it's not the property, it was Suicidal thoughts which plaintiff needed crisis for. The plaintiff asked why his property was thrown away? Lt. Dankevitch said that it wasn't it was going to be 24-72 hours untill he got it back depending on how the plaintiff behaved. the Lt. Dankevitch could not give plaintiff a reason why his Stuff was gone in the first place he said he was not at liberty to dis-cuss this and didn't know So plaintiff should ask Sgt. Lodico. the plaintiff called a crisis to the Lt. Dankevitch before he left the tier and Lt. Dankevitch left without getting mental health.

25. <u>Department of Corrections</u> is using the D.D.U. to house Seriously Mentally Ill inmates against it's own rules and gravity of the legislatures "Crime bill" with a deadline of 2018 to impliment. The D.O.C. also uses this place (D.D.U.) as a torcher chamber for patients with S.M.I.'S, the mentally Ill inmates who need hightened care specially when spending time in a dungeon such as D.D.U. is, it's being Ran by security and the policies propegated in D.D.U. are Seriously dangarouse for inmates as the plaintiff is, who suffer Mental Illness and need clinical help, the security Staff tell the Mental health Staff "not to stop at doors", during the rounds they do in which they are supposed to see if any inmates are having any issues, this was admitted by the plaint-iffs clinician in front of a clinician in I.S.O.U. during a meeting with the D.D.U. clinician, also She (courtney) plaintiff's clinician, said that security does listen to private clinical sessions between inmates and clinical Mental health staff and, this plaintiff testifies to is why the razor was left in his cell, because the security staff were privy to the status of plaintiff's Mental health at the time, and the things he told his clinician he did in prior segregation settings, Such as cutting. All of this is policies propegated by D.O.C. Staff and

(8)

even known by higher ups during rounds, the inmates tell them about all of these issues and report retaliation for calling crisis and for reporting staff for assaults, as well as talking about assaults in private clinical meetings, happening with the plaintiff personally when he told Superintendant DeMoura (Defendant) he felt "unsafe, and knew the Security Staff were trying to intimidate him into not calling the Crisis calls, and reporting staff for these assaults and verbal threats staff make/made towards inmates on his tier and the ones around him. This all creating an unsafe environment for inmates and staff alike who would be reporters of these illegal acts but are intimidated into covering up for them as Medical Staff did to the plaintiff saying he cut his own eye despite hearing the verbal abuse and threats the Corrections-officers were making during the time before the ambulance was called saying, "see what grievances get you", "that's why your eye is hanging off", "we can do this every day", "we'll be waiting for you when you get back", etc... Medical heard them say they did this to my face but reported differently, why? when they, atleast "Edo" the nurse for Wellpath and Mandated reporter heard the officers loudly and aggressively threatening and attempting to intimidate, as well as admitting to the Brutality and promise to use further Brutality.

26  WELLPATH MEDICAL PROVIDERS as Mandated reporters allow the Dep't of Corrections to dictate what the Mental health workers under Wellpath do, Such as not stopping at inmates doors, that's if they are even awake, the Correctional officers dictate that the Clinicians do their rounds either befor breakfast which is usually when inmates will at-least get up to get their food, or after breakfast when inmates usually go back to sleep or are not aware of them quietly passing by, they do not usually knock on doors unless the specific inmate has a scheduled meeting that day with this inmate, and even then they use coercive-tactics not to meet, by saying it's either recreation outside for the in-mates only hour out of his cell that day or meeting with their clinicans who mostly will not be of any help to the inmate, as my Clinician-who would tell me, plaintiff she would try to work around his rec the plaint-iffs outdoor time, then the officers would come right befor Plaintiff's rec time and tell him his meeting was then, obviously ignoring the pre-vious alleged measures to "work around his recreation, then telling the plaintiff he could still get his rec but he would be alone outside as it would be after everyone went in the plaintiff would go out.) This put plaintiff in an already precarious situation, in a worse one resulting in pannick attacks, anxiety, depression, and knowledge that

(19)

the plaintiff would spend two years in this condition causing plaintiff Suicidal thoughts, which would then result in calls for crisis which would lead to further derisive comments and actions by the officers who took coercive measures, to stop inmates from using this outlet or complaining to clinical wellpath staff of the officers actions or reactions Such as comming up with ways to make plaintiff believe his food was being manipulated or other things, telling Medical staff an inmate was abusing Crisis calls which could lead to disciplinary reports etc... Wellpath did not report these things and worked with Doc. Staff to ensure Mental health did their part by using the D-wing When inmates were in crisis but did not do any thing to help the inmate, making the use of D-wing clearly punishment not rehabilitative or therapeutic to the plaintiff inmate. The failures of Wellpath to act on the knowledge of Serious abuse makes them party to these cruel and unusual settings propagated in D.D.U. in some cases criminal acts such as what happened to the plaintiff, They knowingly allowed the officers to listen to priviledged meetings, found out plaintiff's propensity for Suicidal thoughts and cutting history, then a razor was left by an officer in his cell. The Court should know that this is not guess work Plaintiffs Clinician admitted these things in front of another clinician in the , I.S.O.U. in OCCC complex, during plaintiff's hospitalization. This failure of Wellpath Mental / Medical Health Providers to take step to ensure these failures did not happen despite its knowledge of Serious Corruption and abuse shows deliberate indifference to his Serious Medical / Mental health needs .

Thus plaintiff demands a Jury of his Peers or Just settlement from the Defendants to Compensate and Serve as a reminder NOT to abuse their power again.

I, Matthew P. Tottenham do hereby Swear that these facts are true and correct, They are not meant for any Malicious puposes, they consist of facts that the plaintiff has first hand Knowledge of and as Stated in these paragraphs, Tell the truth, Signed under penalty of perjury.

9/9/21

Matthew P. Tottet

MATTHEW P. Tottenham
P.O. Box 8000 Shirley, Ma, 01464

[10]