UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MATTHEW TOTTENHAM, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 21-CV-11531-AK |
| DOUGLAS A. DEMOURA, SERGEANT LODICO, LIEUTENANT DANKEVITCH, FOUR UNAMED OFFICERS, DEPARTMENT OF CORRECTIONS, WELLPATH MEICAL, CAROL MICI, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

**A. KELLEY, D.J.**

This action arises from an incident while Plaintiff Matthew Tottenham ("Tottenham") was incarcerated at Massachusetts Correctional Institution Cedar Junction ("Cedar Junction") in Walpole, Massachusetts. [Dkt. 1]. Tottenham brought this suit against the Department of Corrections ("DOC"), Wellpath, a medical provider for DOC, Carol Mici, Commissioner of DOC, employees at the facility: Douglas A. DeMoura ("DeMoura"), Superintendent of the facility, Sergeant Lodico ("Lodico"), Lieutenant Dankevitch ("Dankevitch"), and four unnamed correctional officers.[1]  [Id.].  Tottenham alleges that Defendants violated his First, Eighth, and

---

[1] The Court dismissed the Department of Correction and Commissioner Carol Mici as Defendants in this case.  [See Dkt. 5] (stating that Tottenham failed to make any allegations to reasonably infer an "affirmative link" between Commissioner Mici and the alleged misconduct of the other Defendants); Laubinger v. Dept. of Revenue, 41 Mass. App. Ct. 598, 601 (1996) (stating that claims against DOC "may not be maintained because an agency of the Commonwealth is not a 'person' subject to suit for monetary damages under [Section] 1983").  Tottenham also voluntarily dismissed Wellpath from the case.  [Dkt. 22, Dkt. 23].

1

Fourteenth Amendment rights under the United States Constitution pursuant to 42 U.S.C. Section 1983. [Id.]. Defendants DeMoura, Lodico, Dankevitch (collectively, "DOC Defendants") now move to dismiss Tottenham's claims for failing to exhaust all his administrative remedies pursuant to the Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. Section 1997e(a), and the state equivalent, Mass. Gen. L. Chapter 127, Section 38F. [Dkt. 48, Dkt. 49 at 2]. For the reasons stated below, DOC Defendants' motion to dismiss, [Dkt. 48], is **DENIED**.[2]

I.   **BACKGROUND**

The following summary is based on the facts as alleged in Tottenham's complaint, [Dkt. 1], and the documents attached to his complaint. [Dkt. 1-3, Dkt. 1-4]; see Fraser v. Mass. Bay Transp. Auth., 544 F. Supp. 3d 148, 153 (D. Mass. 2021) (stating that when "considering [a] motion to dismiss, the [c]ourt also may consider documents attached to or fairly incorporated into the complaint" (quoting Branco v. Huard, 2021 WL 916268, at *1 n.2 (D. Mass. Mar. 9, 2021)).

This case arises from Lodico's alleged retaliation after Tottenham spoke with a paralegal from Prisoner Legal Services regarding Lodico's improper search of his cell and for Lodico's failure to wear proper personal protective equipment during the Covid-19 pandemic. [Dkt. 1 at 13-14]. The alleged retaliation occurred on February 2, 2021. [Id. at 5]. Lodico and other unnamed officers encouraged Tottenham to commit suicide by providing him a razor to cut himself, and eventually assaulted him when he asked to speak with mental health support

---

[2] DOC Defendants move to strike Tottenham's oppositions, [Dkt. 51, Dkt. 52], to their motion to dismiss because they were untimely filed. [Dkt. 53, Dkt. 54]. DOC Defendants also move to strike Tottenham's motion in "concession" where he states that he is "used to state court . . . procedure," where the court provides the parties a deadline to respond by. [Dkt. 55, 57]. Although Tottenham's opposition was untimely, the Court will not dismiss his claims on this basis. See Cruthird vs. Boston Police Dep't, No. 10–10438–PBS, 2010 WL 4449732 at *5 (D. Mass. Nov. 3, 2010) (denying defendants' motion to strike pro se plaintiff's untimely response despite failing to provide a reason for her untimely filing). DOC Defendants' motions to strike, [Dkt. 53, Dkt. 57] are **DENIED**.

because he was having a "crisis." [Id. at 14-16]. Tottenham alleges that he filed an informal complaint regarding this incident, which was denied. [Dkt. 1-3 at 2].

Immediately following the incident, Tottenham was hospitalized at Good Samaritan Hospital in Brockton, and he was diagnosed with a concussion. [Dkt. 1-3 at 3]. Tottenham returned to Cedar Junction, but shortly after, he was hospitalized again at Old Colony Correctional Center ("OCCC"). [Dkt. 1 at 7; Dkt. 1-3 at 3]. While at OCCC, Tottenham filed a formal grievance dated February 2, 2021, by handing it to the OCCC Superintendent pursuant to 103 CMR Section 491.14(4).[3] [Dkt. 1 at 7]. According to the DOC Defendants' records, Tottenham's grievance was submitted and denied on March 11, 2021. [Dkt. 50 at 1-2, 38-39]. The Institutional Grievance Coordinator denied Tottenham's grievance as untimely, and "referred [it] to the Superintendent for appropriate action if deemed necessary." [Id. at 38]. On the following page of the denial, printed is "Denied grievances may be appealed to the Superintendent within 10 working days of the Institutional Grievance Coordinators decision." [Id. at 39].

Tottenham filed an "inmate grievance appeal form" on April 26, 2021. [Dkt. 1-3 at 6]. DeMoura responded to Tottenham's grievance, dated February 2, 2021, on April 26, 2021, stating that "a review of all pertinent documentation, videos and interviews were conducted regarding your complaint," and he "found that no further investigation is warranted." [Dkt. 1-3 at 7].

---

[3] The Court refers to the date next to Tottenham's signature, which reflects February 2, 2021, as the date filed. At the top of the grievance form is the date February 8, 2021. [See Dkt. 1-3 at 2]. If the date at the top of the grievance form is the correct date, it would still be timely pursuant to 103 CMR Section 491.14(1).

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

## III. DISCUSSION

DOC Defendants assert that Tottenham did not exhaust his remedies under the PLRA, 42 U.S.C. Section 1997e(a), and that therefore, the Court should dismiss his claims. [Dkt. 48, Dkt. 49 at 2]. "The PLRA precludes 'a prisoner confined in any jail, prison, or other correctional facility' from bringing an action 'with respect to prison conditions under [42 U.S.C. Section 1983] . . . until such administrative remedies as are available are exhausted." Lozada v. MPCH, 355 F. Supp. 3d 58, 63 (D. Mass. 2019) (quoting 42 U.S.C. § 1997e(a)). The Massachusetts corollary, Mass. Gen. L. Chapter 127 Section 38F, also precludes judicial review until the inmate exhausts all available grievance procedures. See id. at 63. "To exhaust remedies, a prisoner

4

must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Id. at 64; see White v. Spaulding, No. 19-11102, 2020 WL 1974333, at *9 (D. Mass. Apr. 24, 2020) (stating that prisoners must follow "rules that are defined not by the PLRA, but by the prison grievance process itself" (quoting Jones v. Book, 549 U.S. 199, 218 (2007)). The Massachusetts DOC grievance process is governed by regulations at 103 CMR Sections 491.01-491.27. See Davis v. Commonwealth, 95 Mass. App. Ct. 398, 399-400 (2019).

### A.     The Prison Litigation Reform Act

First, DOC Defendants assert that Tottenham failed to file an informal complaint, pursuant to the Massachusetts DOC Informal Complaint Resolution Standard Operating Procedure, which requires that "[i]nmates shall file an informal complaint within five (5) working days of the actual incident or within five (5) working days of the inmate's becoming aware of the incident or situation, whichever is later." [Dkt. 49 at 6]. Second, DOC Defendants assert that Tottenham did not submit a timely grievance pursuant to 103 CMR Section 491.14(1), which requires that inmates submit grievances within ten working days of the incident. [Id. at 6-7]. DOC Defendants assert that they received Tottenham's grievance on March 11, 2023, and that the alleged incident occurred on February 2, 2021. [Id. at 6]. Third, DOC Defendants assert that Tottenham failed to timely appeal the denial of his grievance pursuant to 103 CMR 491.16(1). [Id. 6-7].

DOC Defendants fail to meet their burden to establish that Tottenham did not exhaust his administrative remedies. "PLRA exhaustion is an affirmative defense as to which defendants bear the burden of proof. A motion to dismiss may therefore be granted on the ground of failure to exhaust 'only where the facts establishing the defense [are] clear 'on the face of plaintiff's

5

pleadings.'" White, 2020 WL 1974333, at *5 (Hudson v. MacEachern, 94 F. Supp. 3d 59, 67 (D. Mass. 2015)).

DOC Defendants assert that Tottenham failed to file an informal complaint, which is the first step of DOC's grievance process. See 103 CMR § 491.05 (stating that inmates must submit an informal complaint prior to submitting a formal grievance). However, inmates are not required to utilize an informal complaint form, 103 CMR Section 491.05, for emergency grievances or allegations of staff misconduct. See 103 CMR Sections 491.09(5)(a), (b). Tottenham's complaint alleges staff misconduct under 103 CMR Section 491.09(5)(b). [Dkt. 1]. For example, Tottenham states that he was "harass[ed]" for writing the grievance, called a "rat," sprayed with mace, and was beaten by several staff members "with full body armor and shield." [Dkt. 1-3 at 4]. Tottenham also alleges that he submitted an informal grievance regarding this incident, which was denied, [id. at 2, 7], a fact redacted in DOC Defendants' exhibits [Dkt. 50 at 35]. Tottenham includes an unredacted version of that same grievance, where he states that he filed an informal complaint. [Id. at 2].

Tottenham also alleges that he informed DOC Defendants of his concerns by speaking with staff, as encouraged by DOC. [Dkt. 1 at 19-20]; see 103 CMR §§ 491.09(2), 491.15 (stating informal "complaints can be addressed easily and quickly through direct communication" with the "staff person responsible in the particular area of the problem"); see also Shaheed-Muhammad v. Dipaolo, 393 F. Supp. 2d 80, 95 (D. Mass. 2005) (finding that the Massachusetts DOC informal grievance process allows inmates to make informal complaints orally or in writing); Cook v. Turco, No. 18-30137-MGM, 2020 WL 8971533, at *2 (D. Mass. Dec. 23, 2020) (acknowledging Massachusetts DOC inmate successfully made an "oral, informal

6

complaint"). DOC Defendants therefore fail to meet their burden to show that Tottenham did not file an informal complaint.

Tottenham also included his grievance with his complaint, which is dated February 2, 2021. [See Dkt. 1-3 at 2]. DOC Defendants assert that Tottenham did not file his grievance until March 11, 2021.[4] [See Dkt. 50 at 1-2, 38] (stating that "[o]n March 11, 2021 inmate Tottenham filed Grievance #112603"). Tottenham asserts that he submitted this grievance while he was hospitalized at Old Colony Correctional Center ("OCCC"). [Dkt. 1 at 7]. DOC Defendants do not provide the dates that Tottenham was hospitalized at OCCC. While hospitalized, Tottenham submitted his grievance to the OCCC Superintendent, as required by 103 CMR Section 491.14(4). [Dkt. 1 at 7]. The OCCC Superintendent was then required to "immediately forward the grievance to the [Inmate Grievance Commission]." See 103 CMR Section 491.14(4). Although DOC Defendants submitted an affidavit from its paralegal stating that DOC received Tottenham's grievance on March 11, 2021, Tottenham dated his grievance February 2, 2021. [Dkt. 50 at 35, 38-39]. If Tottenham submitted his grievance to the OCCC Superintendent by February 2, 2021, it would be timely pursuant to 103 CMR Section 491.14(1).[5] The paralegal's affidavit also states that "there is no record of inmate Tottenham filing any other grievance or informal complaint form concerning the matters raised in inmate Tottenham's [c]omplaint." [Dkt. 50 at 2]. Tottenham also submitted an inmate grievance appeal form, dated April 26, 2021,

---

[4] Tottenham also dates his grievance February 8, 2021, which would still be timely pursuant to 103 CMR Section 491.14(1). [See Dkt. 1-3]. The Court, however, refers to the date next to Tottenham's signature, which reflects February 2, 2021.
[5] Even if Tottenham's grievance was submitted February 8, 2021, it would still be timely pursuant to 103 CMR Section 491.14(1).

with his complaint. [Dkt. 1-3 at 6].

The Institutional Grievance Coordinator denied Tottenham's grievance, number 112603, as untimely on March 11, 2022, [Dkt. 50 at 38], but also notes that his "grievance has been referred to the Superintendent for appropriate action if deemed necessary." [Id. at 38-39]. The following page of the inmate grievance form contains boiler plate language stating that "Denied grievances may be appealed to the Superintendent within 10 working days of the Institutional Grievance Coordinators decision." [Id. at 39]. This conflicts with the notification that Tottenham's grievance was referred to the Superintendent. [Id. at 38]. The Superintendent took further action by sending Tottenham a letter dated, April 26, 2021, stating that "A review of all pertinent documentation, videos and interviews were conducted regarding your complaint and found that no further investigation is warranted." [Dkt. 1-3 at 7].

DOC Defendants assert that Tottenham failed to appeal his grievance to Superintendent DeMoura. [Dkt. 49 at 6-7]. Superintendent DeMoura, however, reviewed Tottenham's grievance since the Institutional Grievance Coordinator referred it to him for his review. [Dkt. 50 at 38]. Superintendent DeMoura's decision did not inform Tottenham of his right to appeal because pursuant to 103 CMR Section 491.16(1), the superintendent's review is the inmate's last step required to exhaust their administrative remedies. [Dkt. 1-3 at 7]; see Ortiz v. Sullivan, No. 4:17-CV-40143-TSH, 2018 WL 3946468, at *3 (D. Mass. Aug. 16, 2018) (stating that the "PLRA requires a prisoner plaintiff to exhaust only administrative remedies that 'are available'" (quoting 42 U.S.C. § 1997e(a)). DOC Defendants, therefore, fail to establish that Tottenham did not appeal his decision to Superintendent DeMoura.

Since DOC Defendants fail to meet their burden that Tottenham did not exhaust all administrative remedies under the PLRA, the Court denies their motion to dismiss. [Dkt. 48].

## IV.     CONCLUSION

For the foregoing reasons, the DOC Defendants' motion to dismiss [Dkt. 48] is **DENIED**.

**SO ORDERED.**

Dated: March 31, 2023                                                             /s/ Angel Kelley
                                                                                                    Hon. Angel Kelley
                                                                                                    United States District Judge